ABEL GEORGE MALDONADO *v.* STATE OF INDIANA.

[No. 1275S385. Filed October 20, 1976.]

*John F. Davis,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles M. Russell,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction of two counts of the offense of commission of a felony, robbery, while armed, Ind. Code § 35-12-1-1 (Burns 1975).

On August 23, 1974, Mrs. Karen Benningfield and her aunt, Mrs. P. B. Combs, returned from shopping to their home in Evansville. They came upon two men in a bedroom of the house. The men carried guns and they seized both women, handcuffed, bound, and gagged them. The men took a gold vase, a clock, jewelry and money; some of the jewelry was removed from the victims' persons. One of the men fired a shot into a chair to demonstrate that his gun was real. After the men left, Karen Benningfield managed to free herself partially and reach the home of a neighbor, who summoned the police.

Appellant and one Richard Biggerstaff were charged with this robbery. Their cases were apparently severed, although the record does not show when or how. At appellant's trial Mrs. Benningfield identified appellant as a participant in the robbery.[1] An FBI special agent, John O'Rourke, testified

---

1. Mrs. Combs had died of natural causes prior to trial.

that appellant had given him a statement after being advised of his rights, admitting that appellant had planned and executed the robbery. Another agent described seizing a pistol from appellant's place of employment in Michigan City, which an FBI firearms identification expert tested, revealing that the pistol fired a cartridge casing found in the Benningfield bedroom. Finally James Svara, an accomplice, testified that he, appellant, Biggerstaff, and one James Corbett had planned the robbery; that appellant had gone to the victims' house posing as a salesman, and, finding no one at home, had broken in the front door; that Svara had left the house; and that the robbers, including appellant, had met at Corbett's house after the robbery, where Svara saw some of the stolen items.

Svara also testified that the car he was driving on the day of the robbery, a white 1974 Thunderbird, had been stolen by appellant in Chicago and was ultimately destroyed in Illinois by Svara. He described the planning of a robbery in Michigan City with appellant and Biggerstaff. This robbery was also to be of persons in their home; entry was to be gained by ruse; and the victims were to be bound with handcuffs and air duct tape such as was used to bind Mrs. Combs and Mrs. Benningfield. This robbery was not carried out because the intended victims were away from home. Svara identified the pistol found at appellant's business as having been used by appellant in this robbery and in the prior attempt. Svara testified that prior to coming to Evansville, appellant and Svara had formulated a plan to rob a drapery shop there, in which they would pose as customers, draw a pistol, handcuff and tape their victims, and rob them.

Appellant raises numerous issues which can be grouped under three headings:

(1) Whether the testimony concerning other crimes planned or committed by appellant was properly admitted;

(2) Whether the deputy prosecuting attorney denied appellant a fair trial by misconduct during questioning and argument;

(3) Whether appellant was denied effective assistance of counsel by the alleged incompetence of his trial counsel.

## I.

Appellant challenges the admission of testimony concerning the planned Michigan City robbery and the theft and transportation of the Thunderbird.

Evidence showing the commission of other crimes by the accused, separate and distinct from the crime charged, is generally inadmissible to prove the guilt of the accused. *Cobbs* v. *State,* (1975) 264 Ind. 60, 338 N.E.2d 632; *Layton* v. *State,* (1966) 248 Ind. 52, 221 N.E.2d 881. Evidence which is otherwise competent and relevant and which tends to prove or disprove a fact in issue is not inadmissible even though it tends to show guilt of another crime, especially if the two crimes are related. *Jenkins* v. *State,* (1975) 263 Ind. 589, 335 N.E.2d 215.

The Court of Appeals has stated the essence of this rule succinctly in *Alexander* v. *State,* (1976) Ind. App., 340 N.E. 2d 366, 368:

"In allowing such evidence in certain instances, the court seeks to permit the full disclosure of all relevant facts which have some probative value, not for the purpose of showing the defendant to be a 'criminal-type,' but to present to the trier of fact all evidence which tends to prove that the defendant committed the crime charged." (Citations omitted.)

As to the automobile theft, we are of the opinion that this action was sufficiently closely related to the robbery charged to be admissible as what our cases refer to as *res gestae* of the offense charged, *Grimes* v. *State,* (1970) 258 Ind. 257, 280 N.E.2d 575; *Carver* v. *State,* (1962) 243 Ind. 183, 183 N.E.2d 592, and what McCormick characterizes as "happenings near in time and place" which "complete the story of the crime on trial by proving its immediate context." McCormick, EVIDENCE § 190 at 448 (2d. ed. 1972).

In *Byrd* v. *State*, (1965) 246 Ind. 255, 204 N.E.2d 651, evidence was admitted in a case of inflicting injury in the commission of a robbery to show that the defendant had stolen the automobile and revolver used in the offense charged. This Court held that the evidence was properly admitted:

> "It is always proper to show that the instruments used in a crime were possessed by the defendant. Corroborative evidence of how and where he obtained such instruments is certainly proper." 246 Ind. at 256, 204 N.E.2d at 651.

We find no error in admission of testimony concerning the stolen automobile.

As to the references to the planned or attempted robbery in Michigan City, we find that this evidence shows a common scheme or plan relevant to appellant's guilt of the offense charged and was therefore within the exception to the general rule allowing evidence of separate crimes to show intent, motive, purpose, identity, or a common scheme or plan. *Cobbs* v. *State, supra; Jenkins* v. *State, supra; Schnee* v. *State,* (1970) 254 Ind. 661, 262 N.E.2d 186.

The robbery sought to be committed in Michigan City resembled the one executed in Evansville in numerous details. In each case entry was to be obtained by ruse, with one of the robbers posing as a salesman; in each case handcuffs and duct tape were to be used to bind the victims; in each case a pistol with a silencer was to be used. We believe that these features were sufficiently distinctive to be of probative value in corroborating Svara's testimony, and that the testimony was properly admitted.

## II.

Appellant cites numerous instances of what he characterizes as prosecutorial misconduct in the trial in this case. During the cross-examination of Svara, appellant's counsel inquired whether Svara had been charged with the murder of one Steve Powers; the prosecutor interjected, apparently within hearing of the jury, that if the matter of the murder charge

were pursued, "Maldonado is going to be implicated and I'm going to bring it out."

During closing argument the prosecutor suggested that appellant and his cohorts had planned another robbery in Evansville, that of the drapery shop, which was not carried out due to news coverage of the Benningfield robbery. He also alluded to the theft and interstate transportation of the Thunderbird, and the attempted Michigan City robbery. He intimated that Svara had never been involved in serious criminal activity before meeting appellant, and that afterwards "he was involved in armed robberies, murders, post office burglaries. . . ." The prosecutor also asked for the maximum thirty-year determinate sentence for appellant "to be sure that he's not going anywhere;" he characterized the returning of a guilty verdict for thirty years as "the most important thing you'll ever do for your community. A chance to serve and do your duty. . . ." He stated that he didn't want appellant on the streets of his and the jury's community. He called appellant a "professional criminal" once and a "criminal" later. He told the jury that the thirty-year sentence was necessary because of the possibility of probation, parole, commutation, and "good time." The prosecutor referred to a number of statements given by appellant to FBI special agent O'Rourke and implied that appellant had confessed to other crimes. In appellant's closing argument his counsel attacked the credibility of Svara and said, "And they want you to take his word against Abel Maldonado's. Abel Maldonado didn't testify." In rebuttal, the prosecutor repeated this statement.

We note first that appellant raised no objection at trial to the remarks made by the prosecutor during closing argument, except the statement that returning a guilty verdict would be "the most important thing you'll ever do for your community," etc., and the comment on appellant's failure to testify. Therefore with regard to all other instances of alleged improper statements, appellant has failed to preserve any error committed by the trial court

in permitting the prosecutor to make such argument. *Brown* v. *State*, (1975) 264 Ind. 40, 338 N.E.2d 498; *James* v. *State*, (1974) 261 Ind. 495, 307 N.E.2d 59. Appellant also failed to object to the prosecutor's remark during Svara's cross-examination that appellant would be implicated in a murder. We prefer to decide issues on their merits, and not to erect procedural obstacles to their presentation. However, a prompt objection affords the trial court an opportunity to prevent or remedy prejudice to a defendant without the considerable waste of time and resources involved in the reversal of a conviction, and for this reason a contemporaneous objection is required as a condition to appellate review.

A number of cases in this Court and in the Court of Appeals have considered the problem of improper conduct at trial by the prosecuting attorney, and the effect such conduct should have on convictions under review. From these cases the following procedure emerges for the decison of "prosecutorial misconduct" cases:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. See *Swope* v. *State*, (1975) 263 Ind. 148, 325 N.E.2d 193.

2. The Court then considers whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." *White* v. *State*, (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320, followed in *Warner* v. *State*, (1976) 265 Ind. 262, 354 N.E.2d 178, 54 Ind. Dec. 481; *Rufer* v. *State*, (1976) 264 Ind. 258, 342 N.E.2d 856; *Turczi* v. *State*, (1973) 261 Ind. 273, 301 N.E.2d 752; *Robinson* v. *State*, (1973) 260 Ind. 517, 297 N.E.2d 409. The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial. *White, supra,* at 272 N.E.2d 319-20. This is the same standard which *White* mandates trial courts to observe in ruling on mistrial motions.

3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope* v. *State, supra.*

4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. *Robinson* v. *State,* (1973) 260 Ind. 517, 297 N.E.2d 409; *Garrett* v. *State,* (1974) 157 Ind. App. 426, 300 N.E.2d 696.

The two remaining instances of alleged misconduct are the prosecutor's commenting on appellant's failure to testify, and his urging the jury to convict in order to "serve and do your duty" to the community.

In appellant's closing argument his counsel said after commenting on Svara's credibility:

"And they want you to take his word against Abel Maldonado's. Abel Maldonado didn't testify. The law says to keep that out of your mind. You can't do it. You can't go back in that jury room and forget that Abel Maldonado did not testify. As hard as you try, you can't do it. What does he have to testify for? It's not his burden. He doesn't have to prove anything to you."

Thereafter in rebuttal the prosecutor said, reviewing appellant's argument:

"Then he said, 'Are you going to take Svara's word against Abel Maldonado's?' I don't know how you could do that. You haven't heard from Abel—

MR. COOPER: Objection. (interposed)

MR. REDWINE: Maldonado.

COURT: I sustain the objection."

Appellant cites numerous of our decisions which strictly prohibit prosecutorial comment upon the accused's silence. *Rowley* v. *State,* (1972) 259 Ind. 209, 285 N.E.2d 646, and cases cited therein. However, in this case appellant himself

injected the subject of his own silence into the trial. The prosecutor merely repeated the remark which defense counsel had made, paraphrasing out of necessity, since he had no verbatim transcript available. Such repetition is not "comment" within the meaning of *Griffin* v. *California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, or *Rowley, supra*. We need not decide at what point comment upon defense counsel's argument regarding a defendant's silence becomes impermissible, for in this case the prosecutor got no further than repeating the substance of defense counsel's remarks. This was not misconduct.

The prosecutor also made the following remarks in rebuttal argument:

> "And I'm going to ask you, upon your oaths as you told me in voir dire, if I proved this case to you without a reasonable doubt, you would consider a thirty year sentence on each count. *This may be the most important thing you'll ever do for your community. A chance to serve and do your duty—*
>
> MR. COOPER: I object to that. Judge, I object to that.
>
> BY THE COURT: I am going to overrule your objection, Mr. Cooper. You may proceed, Mr. Redwine.
>
> BY MR. REDWINE:
>
> Thank you. I believe in this system. I have to, I'm a Prosecutor and I live with it. I'd have to believe that ladies and gentlemen of this County have the courage and the strength to put people like Abel Maldonado in prison for thirty years. I do believe in it. I think you have that kind of strength." (Emphasis added.)

Appellant objects to the underscored language; we have set out the preceding and following sentences in order to show the context in which the remarks were made.

It is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt. ABA Standards for Criminal Justice, The Prosecution Function § 5.8(d) at 40. (Approved Draft 1971); 75 Am. Jur. 2d *Trial* § 225 at 306 (1974). In *Warner* v. *State, supra,* we held that it was improper for a prosecutor

to imply that the jury should convict the defendant to avert "tyranny." In *Clark* v. *State,* (1976) 264 Ind. 524, 348 N.E. 2d 27, we disapproved the prosecutor's argument that the jury should disregard defense evidence in order not to "set a precedent" which would cause "the end of criminal convictions." 348 N.E.2d at 35.

The phrase "This may be the most important thing you'll ever do for your community" is ambiguous. It could refer to the importance of the jurors' service on a jury, urging them to consider the gravity of their duty; conversely it could be understood to mean that the conviction of Maldonado would be a community service. A prosecutor may not engage in argument which lends itself to such understanding. This argument suggests that the prosecutor in this case misapprehends his role on the criminal justice system. However, we do not believe that this statement placed appellant in "grave peril," and we are therefore not required to reverse the conviction on this issue.

### III.

Appellant's final assertion of error is that appellant was denied effective assistance of counsel because of the unfamiliarity of his trial counsel with Indiana rules of procedure and evidence. The record reveals that trial counsel was a member of the Illinois Bar, from Chicago; no local counsel entered any appearance for appellant.

The instances cited to support the allegation of inadequate representation are counsel's failure to preserve the issues waived in part II, *supra,* and his failure to seek a change of venue from the county due to prejudicial pre-trial publicity.[2]

Although it was appellant's own decision to retain counsel who was not admitted to practice in this State, appellant cor-

2. Appellant appended an affidavit and numerous clippings from the Evansville newspapers which show that prior to the trials of appellant and co-defendant Biggerstaff, a great deal of news coverage was devoted both to this case and other cases pending against each defendant, or in which they were implicated. One account suggested that federal, Illinois, and Kentucky authorities were "standing in line" to prosecute Maldonado and Biggerstaff.

rectly notes, "An accused is entitled to adequate defense whether the attorney is appointed by the court or retained by the accused." *Payne* v. *State*, (1973) 261 Ind. 221, 223, 301 N.E.2d 514, 516. The standard for determining whether the assistance of counsel is adequately effective has been stated on numerous occasions. Representation is inadequate when, on the whole, it reduces the proceedings to a "mockery of justice" which is " 'shocking to the conscience' of the reviewing court." *Bucci* v. *State*, (1975) 263 Ind. 376, 332 N.E.2d 94, 95 (DeBruler, J., dissenting) ; *Payne* v. *State, supra; Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686. Isolated mistakes, poor tactics or strategy, do not automatically constitute ineffective representation. *Blackburn* v. *State, supra*. Counsel is presumed competent. *Haddock* v. *State*, (1973) 260 Ind. 593, 298 N.E.2d 418.

With regard to the failure to preserve issues claim, appellant cites seven instances in which his trial attorney failed to object or otherwise to take appropriate steps to preserve alleged error. We note that counsel made a large number of objections at trial, many of which were sustained. We also note that he cross-examined most of the State's witnesses at some length, and in a manner which appears to have been as effective as possible under the circumstances. The objections which trial counsel did make show no deficiency of understanding of Indiana law. Often competent and effective trial attorneys will fail to object to occasional trial irregularities, either as a matter of trial tactics or through oversight. We cannot say that the waiver of these issues rendered the trial a mockery of justice.

Trial counsel's failure to seek a change of venue from the county for the reason of prejudicial pre-trial publicity also fails to convince us that he failed to render effective assistance to appellant. Appellant urges that this inaction demonstrates counsel's ignorance of Indiana law. We note that Illinois law permits a defendant to obtain a change of venue upon a showing of prejudicial publicity. Smith-Hurd Annotated Statutes, ch. 38, §§ 114-6; ch. 146, §§ 18-35. See 14A Illinois Law and

Practice, *Criminal Law* § 121 at 77f (1968). We cannot bring ourselves to believe that trial counsel was unaware that Indiana allows changes of venue, or that he could not have found the applicable law with minimal effort. We must consider his failure to do so to constitute trial strategy; this strategy may appear unwise to those who can now view it in light of the outcome of this prosecution, but we will not substitute our judgment for that of trial counsel. The record does not support appellant's claim of ineffective assistance.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 355 N.E.2d 843.