## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Jan 29 2015, 9:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deaundra Patterson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2015

Court of Appeals Cause No.
48A02-1404-CR-237

Appeal from the Madison Circuit
Court, The Honorable Dennis D.
Carroll, Judge
Cause No. 48C06-1305-FB-1079

**Najam, Judge.**

## Statement of the Case

[1]     Deaundra Patterson appeals his convictions, following a jury trial, for robbery,

as a Class B felony; battery, as a Class C felony; battery, as a Class D felony;

resisting law enforcement, as a Class D felony; and operating a motor vehicle

while privileges are forfeited for life, a Class C felony. Patterson presents one issue for our review, namely, whether certain statements made by the prosecutor during the rebuttal portion of closing arguments amounted to fundamental error.

We affirm.

## Facts and Procedural History

From May 5, 2013, to May 27, 2013, Patterson committed four armed robberies in Anderson, Indiana.[1] He robbed the same gas station twice, on May 5 and on May 15, and he also robbed a discount tobacco store on May 12 and a liquor store on May 27. In all four robberies, Patterson carried a handgun and a plastic bag, and, in all four, he demanded money and Newport cigarettes. During the first robbery of the gas station, Patterson threatened the lives of the employees, and he also robbed a customer, who entered the station during the commission of the robbery. And, during the subsequent robbery of the gas station, Patterson fired a warning shot at an employee and robbed him of his wallet. Police recovered a .40 caliber shell casing and a .40 caliber round lodged in the store's fuel pump control box.

Over the course of the robberies, the victims of the robberies observed that Patterson wore a number of clothing items, including: baggy clothes, black

---

[1] Patterson committed four robberies but was not identified as the assailant until after the fourth. Nevertheless, for the sake of clarity and ease of writing, we refer to Patterson by name.

pants, a red hoodie sweatshirt, a ski mask, a camouflage mask, a tan jacket, and a puffy winter coat. During some, but not all, of the robberies, Patterson also wore black gloves.

Patterson fled from all four robberies, but police were unable to locate him after the first three. However, after the fourth, witnesses communicated to police that Patterson had fled north in a red truck, and, on his way to the scene, a responding officer observed a speeding red Chevrolet Tahoe. He pursued the Tahoe, with lights and siren activated, but the vehicle fled and the officer lost track of it. Not long after, another officer, Matt Jarrett with the Anderson Police Department, located the Tahoe parked in a driveway, and he observed Patterson knocking on the front door of the residence. Officer Jarrett drew his weapon, and ordered Patterson to turn around with his hands in the air. Patterson, however, placed his hands into his pockets and ran towards the Tahoe. Officer Jarrett approached the vehicle, knocked on the door, and demanded that Patterson stop, but Patterson backed out of the driveway quickly, which caused the vehicle to strike the officer and knock him down. Officer Jarrett fired two rounds at Patterson, but he continued to flee.

Sergeant Kevin Earley, also with the Anderson Police Department, then began pursuit of Patterson with his lights and sirens activated. Patterson led Sergeant Earley on a high-speed chase that concluded when Patterson crashed the Tahoe into a telephone pole. Officers took Patterson into custody, and, when they did, officers recovered on his person a loaded .40 caliber Smith and Wesson handgun magazine. Also, pursuant to a search warrant for the Tahoe, officers

recovered from the vehicle two bandanas; a pair of black leather gloves; a black ski mask; a black coat with a gray hood; a red and black sweatshirt; a plastic bag; an empty Newport cigarette pack; a black and silver .40 caliber Smith and Wesson handgun; and a loaded Smith and Wesson .40 caliber magazine.

[7] Police also obtained and reviewed surveillance video from all four robberies. From those videos, detectives were able to determine that Patterson used the Smith and Wesson handgun in at least two of the robberies. Further, they observed that Patterson conducted all four robberies in the same way. And, in one of the videos, the distinctive soles of the robbery perpetrator's shoes were visible. From this, detectives were able to determine, after comparing those soles to approximately 300 samples, that they matched only the soles of the shoes taken from Patterson at the police station following his arrest.

[8] On May 31, 2013, the State charged Patterson with five counts of robbery, as Class B felonies; battery, as a Class C felony; battery as a Class D felony; resisting law enforcement, as a Class D felony; and operating a motor vehicle while privileges are forfeited for life, a Class C felony. Patterson's jury trial was held over the span of five days in January and February 2014. At trial, the State called seventeen law-enforcement officers, who testified about the investigation they conducted, and several other witnesses. Two of the witnesses, employees present at the first robbery of the gas station, identified Patterson as the perpetrator. During the rebuttal portion of the State's closing argument, the prosecutor stated, "They did a very thorough investigation, our Anderson Police Department." Tr. at 1173. Patterson did not object to this statement.

At the conclusion of the trial, the jury convicted Patterson as charged, and the trial court sentenced him to an aggregate, executed term of seventy-three years in the Indiana Department of Correction. This appeal ensued.

## Discussion and Decision

Patterson contends that the prosecutor's statement regarding the Anderson Police Department's investigation, to which he did not object, constituted fundamental error. Specifically, Patterson argues that prosecutorial misconduct occurred because the prosecution bolstered its case by "vouching" for seventeen witnesses, the officers, whose testimony "was at the heart of the case." Appellant's Br. 5-6. Thus, he reasons, the statement by the prosecutor placed him in grave peril. We cannot agree. Even if we assume that the prosecutor's comments were inappropriate, they do not amount to fundamental error.

As our supreme court recently explained:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), quoted in *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the

defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.*; see also *Maldonado v. State*, 265 Ind. 492, 355 N.E.2d 843, 848 (1976).

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. *Booher v. State*, 773 N.E.2d 814, 817-18 (Ind. 2002). The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Id. at 818. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002), quoted in *Castillo*, 974 N.E.2d at 468 and *Cooper*, 854 N.E.2d at 835. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994) (quoting *Hart v. State*, 578 N.E.2d 336, 338 (Ind. 1991)). In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *See Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002); *Townsend*, 632 N.E.2d at 730; *see, e.g., Castillo*, 974 N.E.2d at 469 n. 11 (noting closing arguments are perceived as partisan advocacy).

We stress that "[a] finding of fundamental error essentially means that the trial judge erred . . . by not acting when he or she should have . . . ." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012). Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error. *See Baer v. State*, 942 N.E.2d 80, 99 (Ind. 2011) (noting it is "highly unlikely" to prevail on a claim of fundamental error relating to prosecutorial misconduct); *Stevens v. State*, 691 N.E.2d 412, 420 n. 2 (Ind. 1997); *Wilson v. State*, 222 Ind. 63, 51 N.E.2d 848, 856 (1943).

*Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014).

[12] Here, we cannot say that the trial court erred by not acting when it should have. Even if we assume for the sake of argument that the prosecutor's statement, "[t]hey did a very thorough investigation, our Anderson Police Department[,]" was misconduct, it was neither blatant nor egregious. Tr. at 1173. Further, even if the statement amounted to misconduct, it could not have had an undeniable and substantial effect on the jury's decision, so as to make a fair trial impossible. Patterson received a five-day jury trial, and volumes of evidence were provided to the jury. Even if some of the evidence tying Patterson to his crimes was circumstantial, it was nevertheless overwhelming. In other words, the prosecutor's statement did not deny Patterson a fair trial.

[13] Affirmed.

Mathias, J., and Bradford, J., concur.