## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2019, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan J. Schueler
Ferguson Law
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey Archer,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 25, 2019

Court of Appeals Case No.
18A-PC-2681

Appeal from the Marion Superior
Court

The Honorable Marc Rothenberg,
Judge
The Honorable Amy Barbar,
Magistrate

Trial Court Cause No.
49G02-1604-PC-16169

**Baker, Judge.**

[1] Jeffrey Archer appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel. Finding no error, we affirm.

# Facts

[2] The underlying facts, as described by this Court in Archer's direct appeal, are as follows:

> Archer is the paternal step-grandfather of L.B., born June 2, 2003. L.B. lives with her maternal grandparents, Michael and Cindy Tollar, who have had full custody of L.B. since December 5, 2008. The Tollars allowed L.B. to visit with her paternal grandmother, Patricia, who is married to Archer, every other weekend from Friday night to Sunday after dinner. L.B. did not have her own bed at Archer's house, so she slept on an air mattress in the living room or in the bed between Patricia and Archer.
>
> Sometime in early 2011, Cindy noticed L.B.'s demeanor would be different after she returned from visits with the Archers. On May 2, 2011, L.B. told her school's student services advisor that Archer had touched her multiple times on the bottom, vagina, back, and chest. L.B. also reported Archer touched her inside her underwear and once put his fingers in her genitalia. The advisor contacted the Department of Child Services.
>
> After detectives and service providers interviewed L.B., the State charged Archer with one count of Class A felony child molesting and two counts of Class C felony child molesting. On July 16, 2012, a jury found Archer guilty as charged. The trial court entered a conviction of Class A felony child molesting and

merged the two counts of Class C felony child molesting. The trial court sentenced Archer to twenty-five years for Class A felony child molesting and two years for Class C felony child molesting, to be served concurrently.

*Archer v. State*, 996 N.E.2d 341, 345-46 (Ind. Ct. App. 2013). In his direct appeal, Archer argued, among other things, that the trial court admitted impermissible vouching testimony and that he had received the ineffective assistance of trial counsel. This Court affirmed the trial court. *Id.* at 354.

[3] On November 17, 2018, Archer filed an amended petition for post-conviction relief, arguing that he had received the ineffective assistance of appellate counsel for numerous reasons, including that appellate counsel failed to argue prosecutorial misconduct and filed a deficient brief. Hearings on Archer's petition took place on March 23 and June 6, 2018. On October 16, 2018, the post-conviction court denied Archer's petition. Archer now appeals.

## Discussion and Decision

## I. Standard of Review

[4] The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-

conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[5] Archer's sole argument on appeal is that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel. To establish ineffective assistance of appellate counsel, the petitioner must show that (1) appellate counsel was deficient in his or her performance, and (2) the deficiency resulted in prejudice. *Id.* at 269. Failure to satisfy either prong will cause the claim to fail. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

# II. Assistance of Appellate Counsel

## A. Prosecutorial Misconduct

Archer first alleges that he received the ineffective assistance of appellate counsel because appellate counsel failed to raise the issue of prosecutorial misconduct. He contends that prosecutorial misconduct occurred through improper vouching and unsavory depictions of defense counsel.

The law regarding prosecutorial misconduct is well established:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), quoted in *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.*; *see also Maldonado v. State*, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976).

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. *Booher v. State*, 773 N.E.2d 814, 817-18 (Ind. 2002). The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Id.* at 818. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002), quoted in *Castillo*, 974 N.E.2d at 468 and *Cooper*, 854 N.E.2d at 835. . . .

*Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014) (footnote and emphases omitted).

[8] Archer alleges that the prosecutor improperly vouched for L.B. during opening argument when she made the following statements:

- "And [L.B.] will tell you what happened at night when she was sleeping with the defendant." Appellant's App. Vol. II p. 137.
- L.B. told her school counselor "exactly what was happening in that bedroom with the defendant the best way that a then eight-year old child can communicate that." *Id.* at 138.
- "[T]he evidence in this case is not going to be easy to listen to. . . . [B]ut it happens and it happened to this kid. *Id.*
- "And I just beg of you that you listen to her and what she has to tell you. She will tell you that the defendant is guilty of Counts I, II, and Count III." *Id.* at 138-39.

[9] Archer also alleges that the prosecutor improperly vouched for L.B. during closing argument when she made certain statements, including the following:

- L.B. had "[n]o reason whatsoever to make this up." Appellant's App. Vol. IV p. 182.
- "And to a kid who has had a grandfather's hand touch her vagina, when a defense attorney says, well, if I were to put my hand right here, could you show me? [W]hat does that mean? You mean, you want me to take your hand and touch my vagina? No. . . . It's creepy by my [sic] one's standards. . . . But why would you do such a thing like that? Well, I'll tell you why because everything that she [says] in that deposition can be bought [sic] out when she comes in here to testify. Classic trick. The same way as when your [sic] asking a child questions as defense attorney, you stand over hereby [sic] your client so she's got to look at him. . . . It's a trick. Classic. And so how do people get away with stuff like this? We read it in the news. How are those guys doing this to kids? Finally, not getting caught because of this. This is [w]hat happens. This is not the only court in this building. Other cases are going on, same thing. This is [w]hat happens. That's how they get away with it." *Id.* at 222-24.
- "And I just cannot fathom that any of you would think it was reasonable that that was some kind of performance from her. It wasn't." *Id.* at 228.

[10] Regarding the prosecutor's statements made during opening argument, Archer fails to present any argument as to how these statements constituted misconduct or placed him in grave peril. But regarding the prosecutor's statements made during closing argument, we agree that the prosecutor's suggestion that defense counsel was playing a "classic trick" to help Archer be acquitted was inappropriate. As our Supreme Court has stated regarding a different closing argument by the same prosecutor,

> Without question, the characterization of defense counsel's line of argumentation as "how guilty people walk" and a "trick," is inconsistent with the requirement that lawyers "demonstrate respect for the legal system and for those who serve it, including . . . other lawyers," *see* Preamble [5], Ind. Professional Conduct Rules.

*Ryan*, 9 N.E.3d at 670. And as to the prosecutor's statement about defense counsel's physical position during questioning and the prosecutor's statement about how people "get away with stuff like this," appellant's app. vol. iv p. 223, we agree that those comments were also improper. This Court has addressed similar comments in yet another closing argument by this same prosecutor, finding that such comments were outside the realm of professionalism and were not appropriate comments on the law and the facts of the case. *See Brummett v. State*, 10 N.E.3d 78, 85 (Ind. Ct. App. 2014) (discussing prosecutor's comments that implied the defense counsel's arguments helped guilty men go free and statement that defense counsel employed tricks), *aff'd on reh'g*, 24 N.E.3d 965 (Ind. Ct. App. 2014).

[11] Archer argues, essentially, that as in *Ryan* and *Brummett*, the same prosecutor in this case committed reversible misconduct with the comments she made during his jury trial and that, consequently, his appellate counsel had a clearly stronger argument to raise—prosecutorial misconduct—than any of the litany of arguments he actually raised.[1] *Cf. Bieghler v. State*, 690 N.E.2d 188, 193-94 (Ind. 1997) (stating that a claim of ineffective assistance of appellate counsel may be

---

[1] In his direct appeal, Archer alleged that the trial court allowed three witnesses to vouch for L.B.'s credibility as a witness. This Court found no error on this basis. Archer rehashes this argument in his appeal from the post-conviction court's judgment, but because this Court has already addressed it, we decline to do so again. *See Lowery v. State*, 640 N.E.2d 1031, 1037 (Ind. 1994) (noting that issues already adjudicated in the appellate process are unavailable to a petitioner for post-conviction relief).

shown when "significant and obvious" issues that were "clearly stronger than those presented" existed in the record).[2]

[12]     Assuming solely for argument's sake that appellate counsel failed to raise a clearly stronger issue of prosecutorial misconduct, Archer nonetheless is unable to demonstrate that, but for his counsel's deficient performance, the result of his direct appeal would have been different. The prosecutor's comments that Archer asserts form the basis of her alleged misconduct are, as the post-conviction court correctly found, "nearly identical" to the same comments disapproved of by our Supreme Court in *Ryan*. Appellant's App. Vol. 2 at 20-21; *compare supra* at 6-7 *with Ryan*, 9 N.E.3d at 668-72. However, while our Supreme Court disapproved of the prosecutor's similar comments in *Ryan*, it held that those comments were insufficient to demonstrate fundamental error. 9 N.E.3d at 672-73. Accordingly, even if appellate counsel had raised the issue of fundamental error with respect to the prosecutor's comments here, this Court would have affirmed.

---

[2] To the extent that Archer argues that *Brummett* and *Ryan* were not available for appellate counsel to rely on because they had not yet been decided, we note that neither case created a new legal standard. Indeed, in *Brummett*, our Supreme Court explicitly clarified that "*Ryan* did not alter the doctrine of fundamental error" on issues of prosecutorial misconduct. *Brummett*, 24 N.E.3d at 966. In other words, the law of prosecutorial misconduct was well established at the time of Archer's direct appeal and was unchanged by *Brummett* and *Ryan*.

[13] In sum, the post-conviction court did not err by finding that Archer did not receive the ineffective assistance of appellate counsel based on the failure to raise this issue in the direct appeal.

## B. Appellate Brief

[14] Archer next alleges that he received the ineffective assistance of appellate counsel because appellate counsel filed a deficient brief on his behalf. Archer contends that appellate counsel did not present cogent argument regarding improper vouching and ineffective assistance of trial counsel issues and that appellate counsel did not have voir dire transcribed.

[15] Counsel is not required to be "perfect representation, only a 'reasonably competent attorney.'" *Woodson v. State*, 961 N.E.2d 1035, 1042 (Ind. Ct. App. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* We give great deference to appellate counsel's decisions regarding which arguments to raise on appeal, which is "one of the most important strategic decisions of appellate counsel." *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012) (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel. *Id.* at 491-92. To succeed on this claim, the petitioner must show that the unraised issue was

significant, obvious, and clearly stronger than the issues that were raised. *Bieghler*, 690 N.E.2d at 194.

[16] Regarding the vouching and ineffective assistance of trial counsel issues, Archer contends that appellate counsel did not present cogent argument in his appellate brief, yet on direct appeal, this Court discussed both issues at length. Thus, we find his argument on this basis unavailing.

[17] Archer also contends that appellate counsel provided ineffective assistance because counsel did not obtain a copy of the transcript of voir dire. During the post-conviction hearing, appellate counsel testified that it was not his policy to review voir dire because what transpires then is not evidence. A record on appeal includes "all proceedings before the trial court," Ind. Appellate Rule 2(L), and as we have stated, appellate counsel has a duty to thoroughly review the entire record of a defendant's proceedings. *Wilson v. State*, 94 N.E.3d 312, 321 (Ind. Ct. App. 2018).

[18] But Archer cannot show prejudice from appellate counsel's error. Although Archer contends that he was prejudiced by a prospective juror who, after acknowledging that she could not be fair and impartial, was selected to serve on the jury, the record shows that this prospective juror was dismissed from jury service. After defense counsel challenged this prospective juror for cause, the trial court stated, "I think she's pretty bad" and "I'm going to grant" the challenge. Appellant's App. Vol. II p. 122-23. This prospective juror was then

excused.  Accordingly, Archer suffered no prejudice from appellate counsel's failure to review this section of the transcript. [3] [4]

[19]  In sum, the post-conviction court did not err by finding that Archer did not receive the ineffective assistance of appellate counsel.

[20]  The judgment of the post-conviction court is affirmed.

Najam, J., and Robb, J., concur.

---

[3] Archer mentions several other issues that appellate counsel could have raised in the direct appeal. Appellate counsel raised six issues in the direct appeal.  Archer does not, in this instant appeal, show that the unraised issues were significant, obvious, and clearly stronger than the issues that appellate counsel did raise.

[4] In his direct appeal, Archer alleged that he had received the ineffective assistance of trial counsel.  This Court found that he had not.  Archer again raises this argument in this instant appeal, but because this Court has already addressed it, we decline to do so again.  *See Lowery*, 640 N.E.2d at 1037.