Charles B. SPLUNGE, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 82S00–8705–CR–502.

Supreme Court of Indiana.

Aug. 12, 1988.

David M. Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Vanderburgh County Superior Court, Defendant-Appellant Charles B. Splunge was found guilty on August 14, 1986, of Murder, under Count I, and Robbery, as a class A

felony under Count II. On September 15, 1986, the trial court sentenced Splunge to a term of sixty (60) years.

Five issues are presented for our review in this direct appeal:

1. denial of Defendant's motion to discharge the jury;
2. misconduct of the prosecutor;
3. refusal of Defendant's tendered final instruction 9;
4. sufficiency of the evidence; and
5. sentencing.

The facts show that during the early evening of April 11, 1986, Splunge and Tara Fox entered an Evansville, Indiana liquor store. Upon leaving the store, they obtained a ride from victim Kenneth Wallace. Splunge sat in the rear of the vehicle while Fox was seated in the front passenger seat. While stopped at an intersection, Fox pointed a gun at Wallace and fired two shots. Splunge then pushed Wallace out of the car and Splunge and Fox fled from the area in Wallace's car. Several people observed these incidents. Louis Moschner pulled up behind the Wallace vehicle and observed Wallace driving, Fox in the front passenger seat, and Splunge in the back seat. Moschner observed scuffling and arguing in the Wallace vehicle and heard screaming and yelling but could not understand the words. Splunge appeared to Moschner to be participating in the argument. Witness DeLoyd Greer testified he saw Splunge exit the right side of the car at the same time or immediately after the two shots were fired. He said Splunge appeared to get out of the right front door where Fox was actually seated. According to Greer, Splunge took a few steps toward the rear of the car and then got back in, still on the right side of the car. The vehicle immediately sped away before Splunge could have gotten behind the wheel. However, the other eyewitnesses, Moschner, and Tony Williams, did not see anyone get out of the right side of the vehicle. Moschner saw that Splunge was driving the vehicle and Fox was in the front passenger seat, the handgun in her hand, sticking it out of the window. Fox still had the weapon when she was ap-

prehended. The handgun had belonged to Splunge and it was undisputed that he had it on the morning of April 11, 1986, and possessed it as late as 5:15 p.m., on that day. Wallace survived for a time and told police officers he had picked up two people on Riverside, gave them a ride, they had shot him, pushed him out on the street and taken his car. Wallace was unable to give details to the police as he was in shock from the incident but did tell them the black girl shot him. Wallace died in surgery as a result of massive internal hemorrhaging. Splunge and Fox finally wrecked Wallace's vehicle and Splunge went to the home of Willard Alexander and Jennie Upchurch. He told them Fox had shot a man and also that he and Fox were riding around with this man and trying to hustle some money out of him. The police came to the Alexander home but Splunge once again fled. He was arrested on Saturday, April 12, 1986, and the same day gave a statement to police in which he admitted to being in the car, denied there was any plan to rob Kenneth Wallace and stated he was forced by Fox to drive the car away from the scene of the shooting. He refused to sign the statement. Witness Rodney Hayden testified he was an inmate at the Vanderburgh County Jail and discussed this incident with Splunge. Hayden testified Splunge told him that he and Fox intended to rob the victim and make some money. Splunge also told Hayden that he gave the gun to Fox.

### I

■ Splunge is a black person. Only two prospective jurors were black and both of them were removed from the jury by peremptory challenges of the prosecuting attorney. Splunge claims the prosecutor's removal of the two black prospective jurors violated his right to a jury drawn from a cross section of the community.

Generally it is presumed the prosecution uses its peremptory challenges to obtain a fair and impartial jury. *Hoskins v. State* (1982), Ind., 441 N.E.2d 419, 422. However, in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the

United States Supreme Court set forth requirements for a defendant to establish a *prima facie* case of purposeful racial discrimination by the prosecution in the selection of a jury. These requirements were adopted by this court in *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 88–89. To establish such a case, the defendant must show: 1) he is a member of a cognizable racial group; 2) the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; 3) the facts and any other relevant circumstances of his case raise an inference that the prosecutor used that practice to exclude the veniremen from the jury due to their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723; *Phillips*, 496 N.E.2d at 89. Once the defendant makes a *prima facie* showing, the burden shifts to the State to present an explanation for challenging such jurors. The prosecutor's explanation, however, need not rise to the level justifying exercise of a challenge for cause. The trial court then will have the duty to determine whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24. Since the trial court's decision will necessarily involve the evaluation of credibility, a reviewing court should give those finding great deference. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

During the *voir dire* examination of the jury by the prosecuting attorney, it was determined Clark was an acquaintance of Splunge. The State gave this as a reason for removing Clark as a prospective juror. Though no such problem appeared in the examination of prospective juror Brodie, the prosecuting attorney stated it was his opinion this juror did not exhibit a sufficient comprehension of the standard of proof. The prosecuting attorney denied he removed either of these prospective jurors on the basis of race. The trial court denied the motion to dismiss the jury. In view of all the facts and circumstances here, we fail to find sufficient grounds to determine the trial court committed reversible error in that ruling. It was clearly reasonable for the prosecutor to dismiss a juror that was acquainted with the defendant. Though

the assessment of the prosecutor in the remaining prospective juror was one of judgment and credibility, that was a judgment for the trial court to make that challenging of one juror hardly presents a fact situation on which the trial court or this court could make the assessments Splunge urges. We accordingly find no reversible issue.

## II

■ During the presentation of evidence, the State called Officer Michael Cook. The prosecuting attorney asked Cook if he had spoken with Fox and Cook testified he spoke with Fox while she was in his custody. Fox had given a statement to Cook and a second officer, in which she admitted her part in the robbery and killing of the victim and also related Splunge's participation in it. The prosecuting attorney planned to question the officer regarding the nature of Fox's statement and also indicated he intended to call Fox to the stand because Fox had agreed to testify. Splunge objected, however, to Officer Cook's testifying regarding Fox's statement, claiming it was hearsay, and in violation of the Patterson rule established by this court since Fox could not be required to testify. After some discussion outside the presence of the jury, the court informed the parties he would permit the State to examine Officer Cook regarding Fox's statement but that if the prosecutor was not able to produce Fox to testify he would declare a mistrial. The prosecutor made an offer to prove that Fox would, in fact, testify but recalled Officer Cook as a witness and rested his case without questioning Cook any further and without calling Fox.

Splunge contends that the prosecutor engaged in misconduct during opening argument by informing the jury of the essence of Fox's anticipated testimony and then not calling her as a witness, and further withdrawing Officer Cook as a witness when he was about to testify regarding Fox's statement. To determine whether prosecutorial misconduct deprived a defendant of a fair trial, this court established the dual analy-

sis set forth in *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E.2d 843, 848. First the reviewing court determines whether the prosecutor engaged in misconduct by referring to case law and the code of professional responsibility. If misconduct has been established, the determination must be made whether that misconduct under the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of the impropriety of the conduct. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212, 1214.

The statement made by the prosecutor during opening argument was:

The testimony will show, we believe the testimony of Tara Fox will show that at that point, Charles Splunge came out of the liquor store and told Tara Fox that "this is the person we want to hitch a ride with," and at which point, Mr. Splunge gave Tara Fox a hand gun. Testimony will be that Tara Fox did ask Kenny Wallace for a ride, and he agreed to give them a ride.

In addition during opening statement the prosecutor told the jury:

Then we hope to hear from Tara Fox, but I can't guarantee that because Tara has the right to remain silent. As of this time, we have listed her a witness, and she has told me that she will testify.

\* \* \* \* \* \*

I anticipate that if she will testify, that you will hear the true story of what happened and how she—she'll admit that she pulled the trigger. She doesn't remember, I don't think, how many times she shot the man, but she'll admit she pulled the trigger, but she'll say she got the gun from Charles Splunge, and that their idea was that they were going to steal the man's car. They were going to take it.

The State maintains that the prosecutor had indicated to the jury that Fox may not testify but related evidence they would hear as to the manner in which this crime was committed and that the jury did hear such evidence though not from Tara Fox. Rodney Hayden testified that Splunge told him many of these facts, including the fact that Splunge gave his gun to Tara Fox. Splunge's statement was admitted into evidence which confirmed that Fox asked the victim for a ride. The incidents to which Fox would have testified were also put into evidence, either from Splunge himself or other witnesses, by the testimony of Officer Zirkelbach, Willard Alexander, and Jennie Upchurch.

In view of the testimony of all the other witnesses establishing Splunge's participation with Fox in these crimes, it does not appear the statements made by the prosecuting attorney in opening statement prejudiced Splunge to such an extent he was placed in a position of grave peril to which he should not have subjected. *See Maldonado*, 265 Ind. at 499, 355 N.E.2d at 848; *Timmons*, 500 N.E.2d at 1214. Furthermore, the scope and content of the opening statement is within the discretion of the trial court. The purpose of an opening statement is to inform the jury of the charges as well as the contemplated evidence. *Tacy v. State* (1983), Ind., 452 N.E. 2d 977, 981. A conviction will not be reversed because of some irregularity in the statement unless there has been a clear abuse of discretion resulting in some prejudice to the accused. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1307. Moreover, an opening statement is not evidence to be considered by the jury. *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1387. The record shows the trial court informed the jury through preliminary instruction no. 11, which was repeated in final instruction no. 9, that the unsworn statements or comments of counsel on either side should not be considered as evidence in the case and it was their duty to determine the facts from the testimony and evidence admitted by the court and given in their presence. Preliminary instruction no. 12 informed the jury the attorneys would have an opportunity to make opening statements but those statements were not evidence and should be considered only as a preview of what

the attorneys expect the evidence will be. In view of all the facts and circumstances here, we see no reversible error presented on this issue.

### III

Splunge tendered final instruction no. 9 which read:

Aiding and abetting does not include assisting the perpetrator of a crime after the crime has been committed. Aiding and abetting does not include assisting the perpetrator in fleeing the scene of a crime.

Instruction of the jury is within the discretion of the trial court. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 581. In determining whether an instruction was properly refused, this court considers whether the tendered instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction was covered by other instructions which were given. *Washburn v. State* (1986), Ind., 499 N.E.2d 264, 266. The trial court did give state's instruction no. 7, which read:

To aid under the law is knowingly to support, help or assist in the commission of the crime charged. It is the being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crimes, though without taking a direct share in its commission.

Instruction no. 7 fully and properly instructed the jury on this subject. Furthermore, the evidence supported the giving of the instruction since the jury had before it facts to weigh which justified findings and/or inferences that Splunge was present and aiding Fox during the entire commission of this crime from its inception to its completion. Splunge's tendered instruction no. 9 was not supported by the evidence and would tend to confuse and mislead the jury. The trial court properly rejected it. *Polk v. State* (1984), Ind., 467 N.E.2d 666, 670.

### IV

Splunge claims there was insufficient evidence to convict him since the evidence showed only that he was present when Fox fatally shot the victim, that there was no evidence a robbery was planned or intended, and that there was no showing a robbery was taking place at the time of the shooting, and there is just as strong an inference the victim's automobile was taken after the shooting to effect an escape from the scene. We see no merit to any of these arguments. There was ample evidence, much of it set out above, which established that Fox and Splunge planned the robbery of this victim, that during the perpetration the victim was fatally shot and they escaped the scene in his vehicle. The questions raised by Splunge are ones of weight and credibility to be determined by the jury. We will affirm this determination if, considering the probative evidence and reasonable inferences supporting the verdict, a reasonable trier of fact could conclude Splunge was guilty beyond a reasonable doubt. *Evans v. State* (1986), Ind., 497 N.E.2d 919, 921. An accomplice need not act out each element of an offense since the acts of one accomplice are imputed to all. *See Spurlock v. State* (1987), Ind., 506 N.E.2d 40, 41. All participants in a robbery which results in a killing are deemed equally guilty in a murder regardless of which participant actually killed the victim. *Evans*, 497 N.E.2d at 921. No error is presented in this issue.

### V

The trial court sentenced Splunge upon his murder conviction to the presumptive term of forty (40) years, with twenty (20) years added for aggravating circumstances. Splunge claims the court erred in adding the twenty years for aggravating circumstances by finding a reduced sentence would depreciate the seriousness of the crime, that Splunge was in need of correctional treatment of greater length than the standard term of imprisonment, and by failing to find mitigating circumstances to weigh against the aggravating circumstances before determining the ultimate sentence. The mitigating factors

urged by Splunge are 1) that he was not the person who actually shot and killed Wallace and 2) there was no evidence a plan existed to kill Wallace or that Splunge intended he be shot.

The trial court gave four aggravating circumstances to support the sentence he gave. He stated Splunge was found guilty of murder, the most serious crime to a civilized society, and that a person commits murder when he either intentionally kills a person or a death results during the commission of a felony. He indicated it was the latter that happened here but the penalty is the same. The court found an aggravating circumstance here was that Splunge was on probation from a prior crime during the time he committed this one and that he certainly violated probation. He then recited that on January 24, 1984, in Louisville, Kentucky, in Cause No. 84–CR–0277, Splunge was convicted of criminal attempted rape, sentenced to three (3) years and probation for five (5) years. He was on that probation at the time of the commission of this act. The court further cited as an aggravating circumstance Splunge's history of criminal activity. He found the presentence investigation report bore out numerous times to support this aggravating circumstance. The court cited as an aggravating circumstance that the person is in need of correctional treatment that can best be provided by his commitment to a penal institution. He then stated, "Again referring to the record he's certainly shown that he was not probation material." For the fourth aggravating circumstance he found the imposition of a reduced sentence, suspension of a sentence, or an imposition of probation would depreciate the seriousness of the crime. He found this to be applicable here, having already stated the crime was the most serious in society.

Ind.Code 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include a statement of the court's reasons for selecting the sentence it imposes. The reason should contain three elements: identification of all significant mitigating and aggravating circumstances, specific facts and reasons which compel the court to find the existence of each such circumstance, and a statement demonstrating the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198, 1201. A finding of mitigating circumstances is made within the court's discretion. The court has no absolute duty to negative potentially mitigating factors. *Johnson v. State* (1986), Ind., 501 N.E.2d 442, 444. The record shows the trial court did consider the facts and circumstances here, including the fact Splunge did not actually pull the trigger. The court found a death resulted in the commission of a felony in which Splunge took part. The court clearly stated Splunge was on probation when he committed this crime, which demonstrated he was not probation material and therefore was in need of correctional treatment. The trial judge's assessment of the nature of the crime was not unreasonable and the finding of the court demonstrating the mitigating and aggravating circumstances was supported by the record. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071, 1073. We find no error in the trial court's imposition of sentence.

The trial court is affirmed.

GIVAN, J., concurs.

SHEPARD, C.J., concurs in result with separate opinion.

DeBRULER, J., dissents with separate opinion.

DICKSON, J., dissents without separate opinion.

SHEPARD, Chief Justice, concurring in result.

I concur in the majority opinion except for its analysis of the prosecutor's use of peremptory challenges.

The majority opinion states that it is generally presumed the prosecution uses its peremptory challenges to obtain a fair and impartial jury. This presumption, announced in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965),

was overruled in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Speaking for the Court, Justice Powell wrote, "[P]eremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247–48 (1953)).

Despite the absence of the presumption, I join in affirming the judgment.

In a dissenting opinion, Justice DeBruler argues that when a prosecutor peremptorily challenges the only two black persons on the venire, a prima facie case of discrimination against the black defendant has been made. The holding of *Batson* is more complex. The defendant must show that the removal of the prospective jurors and any other relevant circumstances raise an inference that the prosecutor is discriminating. This inquiry into whether a prosecutor is improperly using peremptory challenges is for the trial court.

In this case, the prosecutor peremptorily struck two prospective black jurors, Connie Brodie and Charles Clark. The prosecutor said he struck Brodie because she did not understand the burden of proof. Her answers during voir dire, however, do not seem to demonstrate a basis for such an assertion. By contrast, the prosecutor discovered during voir dire that Clark had previous contact with the defendant. This was a legitimate, non-racial reason for a peremptory challenge.

When defense counsel moved to discharge the jury, the trial judge did not pause to make a separate ruling on whether the defendant had made a prima facie case of discrimination under *Batson*. Instead, the judge simply asked the prosecutor to respond. It was an eminently practical way to direct the proceedings.

By denying the defendant's motion, Judge Brune in effect determined that the defense had not established a prima facie case, or that the prosecutor's answer was adequate, or both. Under the circumstances of this case, the trial judge was within his discretion to hold that the removal of one juror for no apparent reason, without more, did not raise an inference of discrimination. The sound exercise of this discretion is part of the *Batson* teaching: "We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. This was a close call, but I cannot see an adequate basis for overturning the trial court's determination.

DeBRULER, Justice, dissenting.

Based upon this record of proceedings, the conclusion is unavoidable that appellant's petit jury was chosen in contravention of the mandate of the Equal Protection Clause of the 14th Amendment. When as here, the prosecution peremptorily challenged the only two black persons on the venire, and a prima facie case of discrimination against the black defendant was thus shown, the burden was upon the prosecution to present a non-racial basis upon which the prosecutor might reasonably believe that it was desirable to challenge them. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In justification of the peremptory challenge of prospective juror Brodie, the prosecutor responded to the court in the following manner, "... in Miss Brodie's case, I feel that she just did not exhibit to me a good understanding of what beyond a reasonable doubt was such to the point where I felt that she would not make a suitable juror, and I think that's all it needs." There is nothing in this record of the voir dire examination upon which one could reasonably question her understanding of this concept, and the prosecutor does not identify any factors to support his feelings which might not be reflected in the cold record of voir dire examination, such as hostility, grimacing or other body language. Based upon this record, I can only conclude that the prosecution failed to rebut appellant's prima facie case of discrimination on account of race, by articulating a neutral reason for

its peremptory challenge of Brodie, related to the particular case to be tried. *Batson, supra.* I therefore respectfully dissent and vote to reverse this judgment.

DICKSON, J., concurs.