Charles B. SPLUNGE, Petitioner–
Appellee,

v.

Dick CLARK and Indiana Attorney
General, Respondents–
Appellants.

No. 91–1499.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1991.

Decided April 6, 1992.

Rehearing and Rehearing En Banc
Denied May 5, 1992.

Michael B. Nash, Chicago, Ill. (argued), for petitioner-appellee.

David A. Nowak, Dist. Atty. Gen. (argued), Thomas D. Quigley, Office of Atty. Gen., Indianapolis, Ind., for respondents-appellants Dick Clark and Atty. Gen. of Indiana.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

During jury selection in Vanderburgh County, Indiana, Superior Court, in petitioner Charles Splunge's trial for murder and robbery, the prosecutor used two of his peremptory challenges to exclude the only two black venire members from the petit jury. Splunge, who is also black, moved to discharge the jury before it was sworn on the basis that the prosecutor had purposefully excluded black potential jurors in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial judge gave the prosecutor an opportunity to respond. Then he denied the defendant's motion and proceeded with the trial.

A divided Indiana Supreme Court affirmed Splunge's conviction. Chief Judge Sharp of the Northern District of Indiana concluded, however, that the prosecutor had exercised one peremptory challenge on the basis of race in violation of the Fourteenth Amendment (Memorandum Opinion and Order of Chief Judge Sharp, February 14, 1991). He therefore granted the writ of habeas corpus under 28 U.S.C. § 2254 unless the defendant is retried within specified time limits. For the reasons set forth below, the judgment of the district court will be affirmed.

## I.

### A. *Facts*

Kenneth Wallace picked up two hitchhikers, Charles Splunge and Tara Fox, outside an Evansville, Indiana, liquor store. Wallace continued driving, Fox sat in the front passenger seat, and Splunge sat in the back seat of the car. When Wallace halted at a stop sign, Fox fired two shots at him. Fox and Splunge pushed Wallace out of the car and left him bleeding in the street. They then drove off in Wallace's car. Wallace survived long enough to tell the police what had happened, but died in surgery a short time later of massive internal hemorrhaging.[1]

### B. *Procedure*

On August 14, 1986, a Superior Court jury convicted Charles Splunge of murder and robbery. He was later sentenced to sixty years' imprisonment. His conviction and sentence followed the trial judge's denial of defense counsel's motion to dismiss the jury on the basis that the prosecutor had exercised his peremptory challenges in an unconstitutional manner. On direct appeal to the Indiana Supreme Court, Splunge raised five alleged errors in support of his contention that his conviction be overturned. By a sharply divided vote, that court held that Splunge had not shown reversible error. *Splunge v. State*, 526 N.E.2d 977 (Ind.1988) (Justice Pivarnik wrote the opinion of that court concurred in by Justice Given; Chief Justice Shepard concurred in the result but authored a separate opinion; and Justices DeBruler and Dickson dissented). The Supreme Court of the United States denied Splunge's petition for writ of certiorari, 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1028 (1989).

Splunge then petitioned for collateral relief in federal district court under 28 U.S.C. § 2254. As noted, Chief Judge Sharp

---

1. A more detailed account of the facts is contained in *Splunge v. State*, 526 N.E.2d 977 (Ind. 1988).

granted defendant the writ of habeas corpus absent retrial within 120 days from the issuance of a final mandate. That judgment was appealed to this Court, which assumed jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

## II.

### A. *Batson Challenge*

Analysis of this case appropriately begins with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. *Batson* held that when a state puts a black defendant on trial before a jury from which members of his race have been purposefully excluded, it denies him equal protection of the laws. See also *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879). "Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson*, 476 U.S. at 85, 106 S.Ct. at 1716. Accordingly, a prosecutor cannot constitutionally challenge potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 106 S.Ct. at 1719.

In *Batson* the Supreme Court set forth three requirements that the defendant must meet in order to establish a prima facie case of purposeful race-based discrimination. The defendant must show that 1) he or she is a member of a cognizable racial group, 2) the prosecutor exercised peremptory challenges to remove persons of the defendant's race from the venire, and 3) facts and relevant circumstances raise an inference that the prosecution used those challenges to exclude members of the venire from the petit jury on the basis of race. *Id.* at 96–97, 106 S.Ct. at 1722–1723. In addition, the defendant can rely on the fact that peremptory challenges permit "those to discriminate who are of the mind to discriminate." *Id.* at 96, 106 S.Ct. at 1722 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)).

In this case, respondents "concede that Splunge could have made a prima facie showing" (Br. 7), and rightly so, for he has established a prima facie case. First, Splunge is a black individual, and blacks are clearly a cognizable racial group under the Fourteenth Amendment. Second, the prosecution used its peremptory challenges to exclude all of the black members of the venire. And finally, the prosecutor's questions and statements during voir dire examination raise an inference that he used at least one challenge to exclude a black woman from the venire solely because she, like the defendant, was black and the victim was white.

During voir dire, the prosecutor asked only the black members of the venire, Mr. Clark and Ms. Brodie, whether their race would influence their decision in the case. Specifically, he asked them if they would be partial to the defendant because he is black. The examination of Connie Brodie by prosecutor Richard D'Amour was as follows:

Mr. D'Amour: The fact that Mr. Splunge is a black man, as you are a black woman, is that going to enter into your mind in determining whether he is guilty or innocent.

Connie Brodie: No.

Mr. D'Amour: You're not going to give his testimony any more credence just because you're of the same race, is that correct?

Connie Brodie: Right. (R.96.)

Similarly, the examination of Charles Clark was as follows:

Mr. D'Amour: Okay. Now, Mr. Clark, as is very obvious, you are a Negro man, and Mr. Splunge is a Negro man. The fact that you are both of the same race, what effect, if any, will that have on your ability to be fair and impartial as a juror?

Charles Clark: None.

Mr. D'Amour: You can put that aside? You're not going to give Charles Splunge's testimony, if he testifies, more credit just because he's a black man?

Charles Clark: I think no citizen deserves that regardless of his race as far as I'm concerned.

Mr. D'Amour: So you're not going to look on him more favorably just because of race?

Charles Clark: No. (R.76.)

The prosecutor's preconception that a black citizen would be more sympathetic to a black defendant was also seemingly evidenced by another question he asked Mr. Clark. The prosecutor asked Clark whether anyone he knew had been *charged* with robbery or murder, R.76,. although he asked the next three white potential jurors whether they or their friends had ever been *victims* of a robbery, R.80, R.82, R.84.

Once the defendant has established a prima facie case of race-based discrimination, as the defendant has done in this case, "the burden shifts to the state to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. At trial, the prosecutor justified his peremptory strike against Mr. Clark on the basis that he had previous contact with the defendant and had given the defendant a ride in his vehicle. As for his challenge against Connie Brodie, the prosecutor said "there were just feelings on the part of the State that she would not be a good juror in this case, and I can assure you that they were not racial motivations at all." R.187. Splunge's counsel asserted that the prosecutor's reasons were insufficiently articulated with respect to his challenge to Connie Brodie. Thus the prosecutor further stated: "in Miss Brodie's case, I feel that she just did not exhibit to me a good understanding of what beyond a reasonable doubt was such to the point where I felt that she would not make a suitable juror, and I think that's all it needs." R. 187–188.

■ After the prosecutor advances a race-neutral reason for his challenge, the trial court must evaluate whether the defendant has sustained his burden of proving purposeful discrimination. Here the trial court denied Splunge's motion without comment. Ordinarily the trial court is given wide latitude in determining whether the prosecutor has exercised peremptory challenges in a racially discriminatory fashion. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Section 2254(d) of Title 28 of the United States Code requires that any state court determination after a hearing on the merits of a factual issue evidenced by reliable and adequate written indicia, "shall be presumed to be correct" unless, among other things, the habeas court concludes that such factual determination is not fairly supported by the record. However, in this case discussion concerning the adequacy of the state trial court's determination under Section 2254(d) or the presence of support in the record for that determination is unnecessary because at oral argument the State expressly conceded that it was not invoking the protection of Section 2254(d). Absent such a presumption, this court no longer defers to the state court's decision. Instead, our task on appeal is to determine whether Chief Judge Sharp's decision, not the state trial court's decision, was clearly erroneous.

■ Given the nature of venireman Clark's prior contact with Splunge, the court could permissibly conclude that the prosecutor did not exercise that peremptory challenge in an unconstitutional manner. "The prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723.

■ However, we agree with the district court's judgment that the prosecutor's challenge of Ms. Brodie did violate constitutional requirements. The prosecutor's explanation was insufficient to rebut Splunge's prima facie case regarding the challenge exercised against Ms. Brodie. The record reveals no evidence whatsoever that she did not understand the standard of proof to be applied in a criminal case—the reason now advanced for upholding her exclusion. Indeed, the only voir dire questions the prosecutor asked her regarding the level of scrutiny she would apply in the case were the previously mentioned race-based questions and the question: "If the State proves its case to you beyond a reasonable doubt, would you find the defen-

dant guilty?" To which question, Brodie answered "Yes." R.95–96. The State asked the identical question to at least one other potential juror who also answered "Yes." Despite her identical answer, this latter member of the venire was not challenged. R.81. In fact, the venire members' answers to this question were almost uniform. R.80 (Michels), R.81 (Cobb), R.85 (Toone), R.88–89 (Hankins), R.145 (Smith), R.147 (Wells), R.150 (Joharm), R.151 (Sluder), R.174 (Huffman). Yet, non-black potential jurors who answered the question identically were deemed fit for jury service. Even though the prosecutor only asked Brodie her understanding of proof beyond a reasonable doubt through this cursory question, the prosecutor struck her because she allegedly did not understand that standard! As Chief Justice Shepard of the Indiana Supreme Court noted, "[Brodie's] answers during voir dire * * * do not seem to demonstrate a basis for such an assertion." 526 N.E.2d at 984 (Shepard, C.J., concurring). Moreover, as Justice DeBruler noted "[t]here is nothing in this record upon which one could reasonably question her understanding of this concept, and the prosecutor does not identify any factors to support his feelings which might not be reflected in the cold record of voir dire examination, such as hostility, grimacing or other body language." 526 N.E.2d at 984 (DeBruler, J., dissenting).

Although this case may be a "close call," id., it is not so because some evidence supports the prosecutor's explanation for exercising his peremptory challenge of Ms. Brodie on the basis given and some evidence suggests that the explanation is pretextual. Instead, this case is a close call because all of the evidence suggests that the prosecutor's explanation as to the exclusion of Ms. Brodie was a pretext for race-based discrimination and yet we are meant to be deferential to the trial court's contrary findings. Because Indiana waived the presumption of correctness under § 2254(d), we agree with the district court's finding of intentional discrimination vis-à-vis Ms. Brodie and need not opine on the outcome of the case if Indiana had not made such a concession.

■ A prosecutor's explanation may not be sustained where discriminatory intent is inherent in the explanation. Respondents assert that the prosecutor's explanation, "as opposed to his motives or intent," must be race neutral (Br. 7). But they entirely miss the point of the *Batson* analysis. A race-neutral explanation is required precisely because race-neutral intent in striking potential jurors is required. Where the prosecutor's neutral explanation is an obvious mask for a race-based challenge, the prosecutor has not met his burden under *Batson*. Indiana has not carried that burden with respect to its challenge against Ms. Brodie.

■ Under the Fourteenth Amendment, a prosecutor may not exercise even a single peremptory challenge if through that challenge he intentionally discriminates on the basis of race. See *United States v. Chalan*, 812 F.2d 1302, 1312–1314 (10th Cir. 1987) (prima facie case of discrimination made when prosecutor struck only remaining venire member of defendant's race), certiorari denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). In Splunge's case, upon analysis it is plain that the prosecutor excluded one black citizen from jury service solely on account of her race. The district court is correct that "this circuit has taken a deadly serious approach to *Batson*." That is because exclusion of potential jurors on the basis of race causes deadly serious harm to the excluded citizen, the defendant, and our system of justice as a whole. *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718; *id.* at 103–104, 106 S.Ct. at 1726–1727 (Marshall, J., concurring). The State might have adopted a like commitment to observing this constitutional safeguard if it so adamantly desired to avoid relitigation.

### B. *Prosecutorial Misconduct*

Because the district court's judgment is being upheld, the magnitude of the prosecutor's trial misconduct need not be addressed. In his opening statement the prosecutor summarized the coming testimony of Tara Fox, a participant in Splunge's offenses, incriminating Splunge. Moreover

he tendered into evidence a written signed statement Fox had given to the police. The trial judge admitted this document into evidence over the strong objections of Splunge's counsel based on the prosecutor's express assurances that he would put Fox on the witness stand. Yet he did not call her as a witness. We are confident that the prosecutor and the trial court will ensure that this troubling trial error will not reoccur at Splunge's retrial.

## III.

The district court observed that "[t]his petitioner deserves the writ, but he also deserves to be retried" (Memorandum Opinion and Order (quoting *Dudley v. Duckworth*, 854 F.2d 967, 972 (7th Cir. 1988))). We agree. Thus we affirm its decision to grant the writ of habeas corpus unless Indiana retries Splunge within 120 days of issuance of this Court's final mandate, or of the Supreme Court's final mandate.