## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2020, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Hosey L. Whitmore
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hosey L. Whitmore, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | February 13, 2020 <br><br> Court of Appeals Case No. 17A-PC-3039 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Elizabeth C. Hurley, Judge <br><br> Trial Court Cause No. 71D08-1506-PC-26 |

**Vaidik, Judge.**

# Case Summary

[1] Hosey Whitmore appeals the denial of his petition for post-conviction relief. We affirm.

# Facts and Procedural History

[2] The underlying facts of this case, taken from this Court's opinion on direct appeal, are as follows:

> On the night of July 9, 2008, Whitmore, along with his friends, Andrew Harvey and Shannon Dockery, was gambling at an illegal gambling house run by Johnny Duke. After losing some money gambling, Whitmore left, and he and his friends went to the home of another friend, Jeffrey Winston. While there, Whitmore suggested they all return to Duke's and rob him. Early the next morning, the four men left in Whitmore's car, heading to Duke's, but the car ran out of gas on the way and the men had to continue on foot. Winston and Harvey were armed with a .38 caliber and a .45 caliber handgun respectively.

> Whitmore and Dockery arrived at Duke's house first, entered, and began playing dice with Duke. Winston and Harvey arrived a short time later. Harvey then drew his gun and pointed it at Duke. Whitmore and Dockery walked out of the house as Duke attempted to wrestle Harvey's gun away from him. At some point during the scuffle, or shortly thereafter, Winston shot Duke twice, once in the head and once in the stomach. Harvey and Winston then stole money from Duke and another person in the house and fled. Duke died several days later from his injuries.

> While fleeing the house, Winston discarded his gun in some bushes. Later that day, Whitmore returned to retrieve the gun

and hid it in a wall inside his home. At some point after the shooting, Whitmore flagged down a police officer and reported Duke had been shot, referring to Duke as his friend. Whitmore was questioned by police on three separate occasions. Initially, Whitmore lied to police about his involvement in the crime and provided false identities for his co-conspirators.

*Whitmore v. State*, No. 71A03-0911-CR-507 (Ind. Ct. App. Mar. 25, 2010), *trans. denied*.

[3] The State charged Whitmore and the three other men with felony murder and Class A felony robbery. Winston and Harvey pled guilty to robbery, and the State dismissed the felony-murder charges against them in exchange for their testimony against Whitmore and Dockery. At Whitmore's jury trial, the State presented evidence that Dockery's, Harvey's, and Winston's handprints were found on Whitmore's car. Trial Tr. pp. 722-27. Following trial, Whitmore was found guilty of both charges. The trial court entered judgment of conviction for felony murder only and sentenced Whitmore to fifty-five years.

[4] Whitmore was represented by counsel on direct appeal. Whitmore argued that the evidence was insufficient to support his felony-murder conviction under an accomplice-liability theory, the trial court abused its discretion in sentencing him, and his sentence was inappropriate. We found that the evidence was sufficient to support a finding that Whitmore knowingly and intentionally aided and induced the robbery and therefore affirmed his felony-murder conviction. *See Whitmore*, No. 71A03-0911-CR-507 ("[T]he evidence here indicates the robbery was Whitmore's idea. In addition, Whitmore attempted to drive the

group to Duke's to commit the robbery. After the robbery and shooting, Whitmore recovered and hid the murder weapon."). Although we found that the trial court did not abuse its discretion in sentencing Whitmore, we found that his fifty-five-year sentence was inappropriate because it was five years longer than the maximum sentence that Winston—the shooter—faced. Accordingly, we remanded the case for the trial court to suspend five years of Whitmore's sentence to probation.

[5] In 2015, Whitmore, pro se, filed a petition for post-conviction relief, which he later amended. Whitmore's claims included ineffective assistance of trial and appellate counsel. In order to support his claims, Whitmore asked the post-conviction court to issue subpoenas to ten potential witnesses. The court denied eight of the subpoenas and issued two—one for Whitmore's trial counsel and one for his appellate counsel. *See* Appellant's P-C App. p. 92.

[6] The evidentiary hearing on Whitmore's petition was held in February 2017. As the hearing was getting ready to start, Whitmore told the post-conviction court that when he was transferred from the DOC to the St. Joseph County Jail three days earlier, the jail confiscated his legal documents, which he needed for the hearing. P-C Tr. p. 3. The State agreed that Whitmore needed his documents. The court took a break so that Whitmore's documents could be brought over to him from the jail. Once Whitmore had his documents, the hearing started. Whitmore did not object. After the hearing, the post-conviction court entered an order denying relief.

Whitmore, pro se, now appeals.

# Discussion and Decision

Whitmore appeals the denial of his petition for post-conviction relief. A defendant who files a petition for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). If the post-conviction court denies relief, and the petitioner appeals, the petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 269.

# I. Fairness of Post-Conviction Hearing

Whitmore first contends that he was denied "a full and fair evidentiary hearing" because his legal documents were confiscated upon his arrival at the jail. Appellant's Br. p. 11. He also notes that when his documents were returned to him, they were "out of context" with the paper clips and staples removed. *Id.* at 12. While Whitmore did not have his documents at the beginning of the hearing, the post-conviction court took a break so that his documents could be brought over to him from the jail. Once Whitmore had his documents, the hearing started. Notably, Whitmore did not complain about the status of his documents, object on grounds that this solution was somehow inadequate, or request a continuance based on his inability to prepare for the hearing. Accordingly, because Whitmore did not raise this issue in the post-conviction court, it is waived. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004)

("[A]s a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court.").

# II. Ineffective Assistance of Trial Counsel

[10]    Whitmore next contends that his trial counsel was ineffective. When evaluating a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). The defendant must prove that (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.*

## A. Failure to File Motion to Suppress

[11]    Whitmore argues that trial counsel should have filed a motion to suppress the evidence collected from the search of his car (handprints) on the basis that his "car had been processed before any warrant was issued." Appellant's Br. p. 25. Whitmore claims that the search warrant was obtained on July 17, 2008, but that the police searched his car before interviewing him on July 14 and 15, 2008. The post-conviction court rejected this claim, finding that there was no basis for trial counsel to have filed a motion to suppress because the evidence showed that Whitmore's "car was impounded, then searched after the officers obtained the warrant." Appellee's P-C App. Vol. II p. 38.

[12]    Whitmore challenges this finding on appeal.  Specifically, he points out that the police asked him about Kristen Shelor during his July 14 and 15 interviews but that there is no way the police would have known about Shelor unless they searched his car before interviewing him (Shelor's handprint was also found on Whitmore's car).  Not only does Whitmore provide no basis upon which the post-conviction court could have concluded that the police had no other reason to ask him about Shelor, but the record shows that the fingerprint report wasn't completed until September 30, 2008—well after Whitmore's July 14 and 15 interviews.  *See* Trial Tr. p. 721.  The post-conviction court properly denied relief on this claim.

## B. Failure to Object to Opening Statement

[13]    Whitmore argues that trial counsel was ineffective for failing to object to the prosecutor's comment during opening statement that Whitmore knew the victim, Duke, because they were "neighbors."  *See* Trial Tr. p. 179.   Whitmore claims that this statement constituted prosecutorial misconduct because the prosecutor knew that Whitmore and Duke weren't neighbors.  *See* Appellant's Br. p. 21.

[14]    One purpose of an opening statement is to inform the jury of the anticipated evidence.  *See Splunge v. State*, 526 N.E.2d 977, 981 (Ind. 1988), *reh'g denied*.  The record shows that the prosecutor had a good-faith basis to call Whitmore and Duke "neighbors" during opening statement.  Notably, Whitmore doesn't dispute that he knew Duke.  *See* Trial Ex. 31; P-C Ex. F.  Moreover, Winston

testified at trial that the house where Whitmore lived "[o]n and off" was "right over the tracks" from the gambling house. Trial Tr. pp. 319-21. As the post-conviction court found, "[t]his appears to be a factual dispute, not an instance of misconduct." Appellee's P-C App. Vol. II p. 37. The post-conviction court properly denied relief on this claim.

## C. Failure to Introduce Video

Whitmore argues that trial counsel was ineffective for failing to introduce a video of him speaking to South Bend Police Department Officer Rick McGee at the homicide office after the shooting. Whitmore claims that the video would have shown that Whitmore was at the homicide office until 8:15 a.m., which would have contradicted Winston's trial testimony that Whitmore was somewhere else around this time.

Winston testified at trial that after the shooting, he, Whitmore, and Dockery ran to Whitmore's house and that he tossed his gun in some bushes. According to Winston, the three men then parted ways, with Whitmore going to look for Harvey and he and Dockery going to his house. Winston testified that later that morning, "probably like" at 7:30 a.m., Whitmore stopped by his house and told him that he had "just left" the homicide office. Trial Tr. p. 338. Whitmore told Winston that he had retrieved the discarded gun from the bushes and put it inside a wall in his house. Whitmore also told Winston that when he walked outside after putting the gun inside the wall, he saw the police and flagged them down. Whitmore then told the police about the shooting at the gambling house, at which point he was transported to the homicide office for questioning.

[17] Whitmore asserts that had trial counsel introduced the video of him speaking with Officer McGee at the homicide office after the shooting, it "would have shown that Whitmore could not have aided Jeffery Winston in the disposal of any weapons, because Whitmore was in police custody at the time Jeffery Winston claim[s] this took place." Appellant's Br. p. 18. Whitmore, however, did not introduce this video into evidence at the post-conviction hearing. Without the video, we can't evaluate Whitmore's claim. Whitmore has failed to carry his burden of proof on this issue.

## D. Failure to Call Witnesses at Trial

[18] Whitmore argues that trial counsel was ineffective for failing to call South Bend Police Department Officers McGee, Jayson McNicholas, and Angela Kline as defense witnesses at trial. He claims that had the officers testified, they would have contradicted Winston's trial testimony that (1) Whitmore ran to his house after the shooting, retrieved the discarded gun from the bushes, and put the gun inside a wall in his house and (2) Whitmore was at Winston's house around 7:30 a.m.

[19] We first note that there is nothing in the record suggesting that these officers would have testified as Whitmore claims. Whitmore first claims that Officer McGee would have testified that Whitmore was at the homicide office until 8:15 a.m., which means that he could not have been at Winston's house around 7:30 a.m. like Winston testified. In support, Whitmore cites Officer McGee's "Narrative Supplemental." *See* P-C Ex. F. Although this report states that Officer McGee interviewed Whitmore shortly after 4 a.m., it does not state

when Whitmore left the homicide office, much less that he was there until 8:15 a.m.

[20] Whitmore next claims that Officer McNicholas would have testified that he picked up Whitmore after the shooting and took him to the homicide office. According to Whitmore, because he was picked up after the shooting, there was no time for him to run back to his house and hide the gun like Winston testified. In support, Whitmore cites Officer McNicholas's "Case Report." *See* P-C Ex. H. Although this report states that Officer McNicholas was dispatched to the shooting, saw Whitmore running in the area, and picked him up, it does not give any times. As such, Officer McNicholas's statement that he picked up Whitmore after the shooting doesn't mean that Whitmore didn't have time to run back to his nearby house first.

[21] Finally, Whitmore claims that Officer Kline would have testified that she and her K-9 searched Whitmore's house and didn't find a gun, which means that he didn't put the gun inside a wall in his house like Winston testified. As support, Winston cites Officer Kline's "Case Report." *See* P-C Ex. O. This report, however, only states that Officer Kline and her K-9 searched the house in order to "look[] for other potential suspects." In other words, Officer Kline did not

search the house for a gun.[1] Whitmore has failed to prove that trial counsel was deficient for not calling these witnesses at trial.

[22] In any event, even if the officers would have testified like Whitmore claims, Whitmore has failed to establish a reasonable probability that the result of his trial would have been different. Whitmore was convicted of felony-murder as an accomplice. Even if Whitmore did not dispose of the gun, as we explained on direct appeal, there was other evidence establishing that Whitmore knowingly and intentionally aided and induced the robbery. Winston and Harvey testified at trial that the robbery was Whitmore's idea, Whitmore drove the group to the gambling house, Dockery's, Harvey's, and Winston's handprints were found on Whitmore's car, and Whitmore told changing stories to the police. The post-conviction court properly denied relief on this claim.[2]

## E. Failure to Request a Mistrial

[23] Whitmore argues that trial counsel was ineffective for failing to request a mistrial based on the judge's alleged bias.[3] A mistrial is appropriate only when

---

[1] Whitmore also claims that trial counsel should have called Earl Richmond as a defense witness at trial. Richmond was at the gambling house when Duke got shot. Whitmore asserts that Richmond would have testified that Whitmore tried to stop the robbery. Whitmore, however, cites no evidence to support this claim. In fact, the only evidence in the record shows that Richmond identified Whitmore "as one of the individuals who had been gambling with them earlier that evening, and who had returned and robbed [Richmond] and Duke." P-C Ex. O.

[2] For these same reasons, Whitmore's claim that the post-conviction court erred in failing to issue subpoenas to these witnesses is without merit.

[3] Whitmore also raises the judge's bias as a freestanding claim. *See* Appellant's Br. pp. 36-39. But as the State argues on appeal and the post-conviction court found below, freestanding claims are not available on

the questioned conduct is so prejudicial and inflammatory that the defendant was placed in a position of grave peril to which he should not have been subjected. *See Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.*

[24] The record shows that before voir dire started, the judge told the parties that she and her husband had "guardianship of [the] son of the half brother" of Winston and that she had known Winston for eight years. Trial Tr. p. 6.[4] The judge explained that she recused herself in Winston's case; however, she didn't "anticipate that to be problem in this case" because she was not the finder of fact. *Id.* The judge asked the parties if they had "any problem" or wanted to make a record, and they said no. *Id.* at 6-7.

[25] After Winston testified at trial, the judge recessed for lunch. After returning from lunch, the judge disclosed to the parties that she did something "really stupid" during the break. *Id*. at 479. That is, "after the court was over" and "while the jury was back in the jury room," the judge went and got a photograph of the boy she had guardianship of and showed it to Winston, at

post-conviction. *See Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002) ("In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal."). Accordingly, we address the judge's bias under ineffective assistance of trial counsel only.

[4] The record is not entirely clear about the relationship between the child the judge has guardianship of and Winston. Whitmore claims that the judge has guardianship of "Winston's son's brother." Appellant's Reply Br. p. 3. Our decision would be the same under either relationship.

which point Winston started crying. *Id.* at 480. The judge told him that she didn't mean to make him cry. The judge told the parties that she didn't think what she did was grounds for a mistrial, because "[n]o one was there when I did it"; however, she said it was very "impulsive" and "the wrong thing to do." *Id.* at 480. The judge asked the parties if they wanted to make a record, and trial counsel responded that he wasn't "going to make any further record" than the one she already had made. *Id.* The jury was brought back in, and the trial resumed.

[26] Whitmore's claim that trial counsel should have requested a mistrial is based on a misunderstanding of the facts. In his brief, Whitmore states that the judge showed Winston the photo "while he was on the stand" and that Winston started "crying in court." Appellant's Br. p. 23. As described above, this is not what happened. Rather, the incident happened while the jury was in the jury room. Although we agree with the judge's characterization of her conduct, because it occurred outside the presence of the jury, we conclude that Whitmore was not placed in a position of grave peril.[5] This is especially so given trial counsel's testimony at the post-conviction hearing that his decision not to request a mistrial was most likely strategic as he remembered thinking that the trial was going well. *See* P-C Tr. p. 47.

---

[5] In an attempt to show that the judge exhibited bias against him in front of the jury, Whitmore cites some of the judge's evidentiary rulings. However, he makes no argument that these rulings were incorrect. In any event, an adverse ruling alone is not sufficient to show that a judge was biased or prejudiced. *See Flowers v. State*, 738 N.E.2d 1051, 1060 n.4 (Ind. 2000), *reh'g denied*.

## F. Failure to Consult with Whitmore on Plea Offer

[27] Whitmore argues that trial counsel was ineffective for failing to communicate to him a second plea offer from the State. *See* P-C Ex. N. Trial counsel has the duty to communicate formal offers from the State, and trial counsel's failure to do so is deficient performance. *See Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015).

[28] At the post-conviction hearing, Whitmore asked trial counsel why he didn't tell him about the second plea offer from the State. Trial counsel testified that he "believe[d]" he discussed the second offer with Whitmore. P-C Tr. p. 53. Although trial counsel couldn't remember the specifics of Whitmore's case, he said he would have discussed "any offers" with Whitmore "as part of [his] normal practice." *Id.* at 54. The post-conviction court chose to believe trial counsel, concluding that Whitmore failed to prove that trial counsel did not communicate the second offer to him. Appellee's P-C App. Vol. II pp. 38-39; *see Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) ("The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses."). We affirm the post-conviction court on this claim.

## III. Ineffective Assistance of Appellate Counsel

[29] Finally, Whitmore contends that his appellate counsel was ineffective. Although we generally consider claims of ineffective assistance of appellate counsel as analogous to claims of trial counsel ineffectiveness, there are significant and important differences between the roles of appellate counsel and

trial counsel. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260 (Ind. 2000), *reh'g denied*. To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Id.* at 261.

## A. Failure to Challenge Admission of Letter

[30]   Whitmore argues that appellate counsel was ineffective for not arguing on direct appeal that the trial court erred in admitting a letter that Whitmore allegedly sent to Harvey from jail. Whitmore claims that this letter should not have been admitted without an exemplar of his writing for comparison. The post-conviction court found that appellate counsel was not ineffective for not raising this issue on direct appeal because trial counsel did not object to the admission of Whitmore's letter at trial:

> At trial, [trial counsel] agreed to the Court's handling of the letters. When the parties were discussing the possibility of putting into evidence the letter that [Whitmore] had written to the Court for use as a handwriting exemplar to compare to the other, unsigned, letter purportedly written by [Whitmore], [trial counsel] stated that it wasn't necessary because he was not going to be arguing that [Whitmore] did not write the letter. According to [trial counsel], he was going to offer an explanation to the jury for the letter.

Appellee's P-C App. Vol. II p. 41 (citing Trial Tr. pp. 539-48). When the State later offered the letter into evidence, trial counsel said, "No objection." Trial Tr. p. 559.

[31] On appeal, Whitmore does not acknowledge that trial counsel did not object when the letter was offered into evidence. Failure to object when evidence is introduced at trial waives the issue for appeal. *See Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). Accordingly, the post-conviction court properly concluded that Whitmore failed to prove that appellate counsel was ineffective for not raising this waived issue on direct appeal.

## B. Failure to Raise Ineffective Assistance of Trial Counsel

[32] Whitmore argues that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. As our Supreme Court has explained, "a postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim." *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998), *reh'g denied*. This is so because presenting such claims often requires the development of facts not present in the trial record. *Rogers v. State*, 897 N.E.2d 955, 964-65 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. If a defendant raises ineffective assistance of trial counsel on direct appeal, the doctrine of res judicata bars him from raising additional claims of ineffective assistance of trial counsel on post-conviction. *Timberlake v. State*, 753 N.E.2d 591, 602 (Ind. 2001), *reh'g denied*.

Whitmore claims that he asked appellate counsel to argue on direct appeal that trial counsel was ineffective for not objecting when the State played a redacted version of his statements to police because the parties had agreed that the State would play the full version. Appellate counsel testified at the post-conviction hearing that he did not raise this issue on direct appeal because it required the development of facts not in the record (i.e., the alleged video that was not played) and therefore should be pursued on post-conviction. P-C Tr. pp. 24-25. In light of this testimony, the post-conviction court concluded that appellate counsel was not ineffective for failing to raise this undeveloped issue on direct appeal. Appellee's P-C App. Vol. II p. 42. The post-conviction court properly denied relief on this claim.[6]

## C. Conflict of Interest

Whitmore argues that appellate counsel was ineffective because he had a conflict of interest based upon his representation of Winston in another case. To establish a conflict of interest amounting to a Sixth Amendment violation, the defendant must establish that counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Coleman v. State*, 694 N.E.2d 269, 273 (Ind. 1998); *Shepherd v. State*, 924 N.E.2d 1274, 1287 (Ind. Ct. App. 2010), *trans. denied*.

---

[6] Notably, Whitmore himself doesn't separately argue that trial counsel was ineffective for failing to object. He only argues that appellate counsel should have raised the issue.

[35] Even assuming that appellate counsel had an actual conflict of interest, the post-conviction court found that Whitmore failed to establish that "he was in any way prejudiced" by appellate counsel's representation of Winston in the other case. Appellee's P-C App. Vol. II p. 42. On appeal, Whitmore maintains that he was, in fact, prejudiced because appellate counsel "withdrew from [his] direct appeal and stated he could not file the petition for transfer," thereby leaving him "in the middle of his direct appeal without counsel." Appellant's Br. p. 44. The implication is that appellate counsel withdrew because of the conflict of interest. But as appellate counsel testified at the post-conviction hearing, he did not withdraw from Whitmore's direct appeal because of any conflict of interest; rather, he withdrew when the direct appeal was over because the public defender's office did not authorize him to seek transfer. P-C Tr. p. 29. The post-conviction court properly denied relief on this claim.

[36] Affirmed.

Riley, J., and Bradford, C.J., concur.